# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| NAZLE AMIRAZODI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:21-cv-00074 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| CAPELLA EDUCATION ) | MAGISTRATE JUDGE NEWBERN |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Nazle Amirazodi, a Tennessee resident, filed a pro se Second Amended Complaint ("Complaint") asserting state law claims against Capella Education Company ("Capella"), a Minnesota corporation.[1] (Doc. No. 8). The Complaint is now before the Court for an initial review.

## I. INITIAL REVIEW

The Court must conduct an initial review and dismiss any complaint filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

---

[1] In response to a Court Order requiring Plaintiff to more clearly set forth her causes of action, Plaintiff filed the Amended Complaint (Doc. No. 6) and Second Amended Complaint (Doc. No. 8), leaving unincorporated factual allegations spread across two documents. For purposes of initial review, the Court exercises its discretion to consider the factual allegations contained in both pleadings.

A. **Legal Standard**

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, pro se plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *see also Brown v. Mastauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of courts is not "to ferret out the strongest cause of action on behalf of pro se litigants" or to "advis[e] litigants as to what legal theories they should pursue").

In reviewing the Complaint, the Court applies the standard for Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court "must (1) view the Complaint in the light most favorable to Plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). The Court must then consider whether the factual allegations "plausibly suggest an entitlement to relief," *Williams*, 631 F.3d at 383 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)), that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true "unwarranted factual inferences," *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)), and "legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

## B. Factual Allegations

The liberally-construed Complaint contains the following factual allegations. Capella is a for-profit online university. (Doc. No. 6 at 8-11). Plaintiff chose to attend Capella because it offered a program designed around adult learners and promised to help those students succeed "within [their] degree program and professionally," through flexibility, affordability, and financial resources. (*Id*. at 7, 10). Specifically, Capella promised prospective students that they could earn a degree "on their terms," and it offered students "help" to reach their goals. (*Id*. at 13). In one such ad, Capella touted:

> The Capella Difference
> Our vision was to create a different path toward earning a degree,
> one that transforms the lives of professionals, on their terms. When
> the time is right, we'll be here to help you reach your potential.

(*Id*.) Capella also promised to help students find ways to fund and complete their academic program: "Paying For Your Degree . . . In changing times, we're ready to help you find ways to pay for your degree, to support your academic *and* financial success." (*Id*. (emphasis in original)).

Based on Capella's promises, Plaintiff enrolled from 2015-17. (*Id*. at 7). Plaintiff thereafter incurred approximately $80,000 in student loan debt to pay for Capella's academic program. (*Id*. at 7, 20). After three years, Plaintiff had completed all required coursework for graduation. (*Id*. at 7). Capella informed Plaintiff that the final step was to complete a "Capstone Project," which is essentially an application to graduate. (*Id*.) Plaintiff, however, had used the maximum financial aid. (*Id*.) She therefore contacted Capella and asked for available options, including creating a payment plan. (*Id*.)

The Complaint alleges that Capella made "no reasonable effort . . . to help [Plaintiff] complete the program," and that no one from Capella offered to assist Plaintiff in figuring out how to pay remaining tuition "on her terms." (*Id*. at 16). Rather, Capella informed Plaintiff that there

3

were no options other than full payment of outstanding debt up front. (*Id*. at 7). Numerous Capella representatives gave Plaintiff the same answer: full payment or she could not graduate. (*Id*.) Finally, Plaintiff agreed to pay and informed Capella that she would need time to raise the funds. (*Id*.) A Capella representative told Plaintiff that was "fine." (*Id*.)

Despite this assurance, Capella sent Plaintiff's $3,200 balance to collections and a debt collector began "harass[ing]" her. (*Id*.) Plaintiff has never been able to get any reasonable answer from Capella about the nature of this purported debt. Capella has ignored emails from Plaintiff begging for information, options, and assistance, or simply referred Plaintiff to the debt collector. (*Id*. at 17-18). But some Capella representatives have given Plaintiff conflicting explanations regarding the nature of the debt or denied that any debt was sent to collections. (*Id*. at 7). To Plaintiff's surprise, a recently-obtained financial statement describes the debt as including never-before-disclosed fees for past semesters when Plaintiff was fully covered by financial aid. (*Id*. at 17). Meanwhile, the debt collector has continued to harass Plaintiff "day and night" on behalf of Capella for the $3,200 debt. (*Id*. at 7).

The Complaint alleges that Capella's promises were a "smoke and mirrors" marketing campaign intended to enhance enrollment rates. (*Id*. at 11). Specifically, that Capella falsely promises students, including Plaintiff, affordability and successful completion of the program in order to "lure [them] in [and] boost revenue with no intent to see [those promises] through." (*Id*. at 11). Thus, at bottom, Capella promised Plaintiff and other students "a lot more than was provided." (*Id*.) The Complaint alleges that that it is "abundantly clear" that Capella had "zero intention" to help Plaintiff graduate and "in no way tried to help [her] complete the program and obtain [her] degree." (*Id*. at 8-9).

Furthermore, Capella is unwilling to allow Plaintiff access to the degree she earned despite an investment of years of time and all her available financial resources.[2] (*Id*. at 8). According to the Complaint, Capella misled Plaintiff, used "extreme measures" to collect tuition payment, used "bully tactics," and "left [Plaintiff] with nothing," merely a "hostage" and "victim of predatory online learning" with severely damaged credit and personal finances. (*Id*. at 9, 11).

**C. Discussion**

Liberally construed, the Complaint brings several causes of action under Tennessee law: (1) unfair or deceptive acts in violation of the Tennessee Consumer Protection Act ("TCPA"); (2) fraudulent misrepresentation; (3) breach of contract; (4) unjust enrichment; (5) negligence; and (6) strict liability. The Court addresses each claim in turn.

    1. <u>Claims Sounding in Fraud</u>

        A. <u>Tennessee Consumer Protection Act Claims</u>

Plaintiff first brings claims under the TCPA, which outlaws "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). The TCPA creates a cause of action for damages available to "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b)." Tenn. Code Ann. § 47-18-109(a)(1). Section 47-18-104(b) includes a long list of acts encompassed by the definition of "unfair or deceptive act or practice." In order to plead a claim under the TCPA, Plaintiff must plausibly allege that: (1) Capella engaged in an unfair or deceptive act or practice declared unlawful by the TCPA,

---

[2] The Complaint alleges that Plaintiff has received information that even if she were to pay the $3,200 balance, Capella would now not allow her to graduate but instead require her to apply to re-enroll for more classes, incurring further delay and expense. (Doc. No. 6 at 8-9, 18).

and (2) Capella's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated[.]" *Young v. Black & Decker (U.S.), Inc.*, No. 3:20-cv-519, 2021 WL 1292528, at *1 (M.D. Tenn. Apr. 7, 2021) (quoting *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)); *Borla Performance Indus., Inc. v. Univ. Tool & Eng'g, Inc.*, No. E201400192COAR3CV, 2015 WL 3381293, at *12 (Tenn. Ct. App. May 26, 2015).

Importantly, the TCPA "is to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices." *Young*, 2021 WL 1292528, at *1 (citing *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 305 (Tenn. Ct. App. 1984)); *McCollum v. Peters*, No. E201402082COAR3CV, 2015 WL 4485557, at *6-7 (Tenn. Ct. App. July 23, 2015) (citing *Signature Designs Grp., LLC v. Ramko*, No. M2011-01086-COA-R3-CV, 2012 WL 2519037, at *14 (Tenn. Ct. App. 2012)). Thus, the Tennessee courts broadly define a "deceptive" act or practice as any "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as a matter of fact." *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 809-10 (Tenn. Ct. App. 2012) (quoting *Tucker*, 180 S.W.3d at 116). Furthermore, a TCPA claim does not require fraudulent or willful misrepresentations, *Borla Performance*, 2015 WL 3381293, at *13 (citing *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12-13 (Tenn. Ct. App. 1992), or a breach of contract. *Mini Sys. Inc. v. Alexander*, No. W201901871COAR3CV, 2020 WL 6892010, at *3 (Tenn. Ct. App. Nov. 24, 2020) (quoting *Hall v. Hamblen*, M2002-00562-COA-R3-CV, 2004 WL 1838180, at *4 (Tenn. Ct. App. Aug. 16, 2004)).

Applying these principles, the Court finds that Plaintiff has plausibly alleged TCPA violations. Among other things, Section 47-18-104(b) forbids:

6

> (7) Representing that . . . services are of a particular standard, quality or grade, . . . if they are of another.
>
> . . .
>
> (21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the . . . services offered, or which may otherwise misrepresent the . . . services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised . . . services to other . . . services.

Tenn. Code Ann. § 47-18-104(b)(7), (21). Liberally construing Plaintiffs' allegations, the Complaint alleges that Capella used false representations and advertisements to misrepresent the quality of services that Capella intended to provide to Plaintiff and other adult learners. (Doc. No. 6; Doc. No. 8 at 6-7). More specifically, the Complaint alleges that Capella used representations and marketing materials to create the false impression that the school would assist adult learners to succeed academically and financially "on their terms," while Capella had no plan to do so and, in fact, delivered a markedly lower level of service characterized by bullying tactics, unfair and deceptive actions, refusals to provide assistance, and roadblocks to securing a degree. *Id*. In addition, the Complaint alleges that Capella's deceptive acts caused Plaintiff an ascertainable loss of money or property – at a minimum, being deprived of $80,000 in tuition paid with student loan debt and any degree funded by that debt. *Id*. Thus, Plaintiff has stated colorable claims for violations of Sections 47-18-104(b)(7) and (21).

### B. Intentional Misrepresentation

Next, Plaintiff brings a claim for fraudulent misrepresentation. The Tennessee Supreme Court has explained that the terms "fraud," "intentional misrepresentation," and "fraudulent misrepresentation" all refer to the same tort, and expressed its preference for the term "intentional misrepresentation." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014) (citing

*Hodge v. Craig*, 382 S.W.3d 325, 342-43 (Tenn. 2012)); *Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC*, 446 F. Supp. 3d 258, 275 (M.D. Tenn. 2020). To plead a claim for intentional misrepresentation, a plaintiff must plausibly allege: (1) the defendant made an intentional misrepresentation of a material fact; (2) the defendant made the representation "knowingly" without belief in its truth, or "recklessly" without regard to whether it was true or false; (3) the plaintiff justifiably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact. *BiotronX, LLC v. Tech One Biomedical, LLC*, 465 F. Supp. 3d 797, 809 (M.D. Tenn. 2020) (citing *Hodge*, 382 S.W.3d at 343; *Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006)); *Wischermann Partners, Inc. v. Nashville Hosp. Cap. LLC*, No. 3:17-cv-00849, 2021 WL 809683, at *8 (M.D. Tenn. Mar. 3, 2021).

In addition, "a future promise can support a claim for intentional misrepresentation if it was made with the intent not to perform." *BiotronX*, 465 F. Supp. 3d at 810 (citing *City of Morristown v. AT & T Corp.*, 206 F. Supp. 3d 1321, 1332 (E.D. Tenn. 2016); *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978)). This type of claim is known as "promissory fraud." For this claim, a plaintiff must allege that the misrepresentation "'embod[ied] a promise of future action without the present intention to carry out the promise.'" *BiotronX*, 465 F. Supp. 3d at 809-10 (quoting *Power & Tel. Supply*, 447 F.3d at 931); *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990).

Here, the Complaint alleges that Capella made misrepresentations to Plaintiff concerning both existing facts and promises to engage in future action. In particular, Capella allegedly made misrepresentations concerning its existing approach to adult learners, the level of support services and resources currently available to adult learners, and the future level of support services,

8

resources, and flexibility programs available to help Plaintiff and other adult learners finance their degree and graduate "on their own terms." The Complaint alleges that these misrepresentations and promises were material; false; known by Capella to be untrue; made by Capella as part of an effort to drive up student enrollment; and made by Capella without the intention to deliver what was represented or promised. The Complaint also alleges that Plaintiff did not know Capella's misrepresentations were false and relied on them in deciding to attend Capella and commit significant financial resources. Finally, the Complaint alleges that Plaintiff was significantly harmed when Capella acted contrary to its misrepresentations. Accordingly, at this early stage, Plaintiff has stated colorable claims for both intentional misrepresentation and promissory fraud.

### C. Compliance with Federal Rule of Civil Procedure 9(b)

Fraud and TCPA claims in federal court must also satisfy the "particularity" requirements of Federal Rule of Civil Procedure 9(b). *Harding v. BMW of N. Am., LLC*, No. 3:20-cv-00061, 2020 WL 5039439, at *2 (M.D. Tenn. Aug. 26, 2020) (quoting *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 751 (6th Cir. 2012)); *Bridgestone Ams., Inc. v. Int'l Bus. Mach. Corp.*, 172 F. Supp. 3d 1007, 1019 (M.D. Tenn. 2016). Under Rule 9(b), a plaintiff must "'allege the time, place, and content of the alleged misrepresentation . . .; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *BiotronX*, 465 F. Supp. 3d at 809 (quoting *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)); *see also Thompson*, 773 F.3d at 751; *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2008)). However, as long as the plaintiff pleads "sufficient detail – in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *BiotronX*, 465 F. Supp. 3d at 809 (citations omitted).

9

Here, Plaintiff has attempted to satisfy Rule 9(b) by providing specific details about Capella and its alleged deceptive scheme. Plaintiff has alleged Capella's "smoke and mirrors" marketing campaign to drive up student enrollment through misrepresentations. She has also attempted to allege – at least in a broad sense – the time, place, and content of Capella's alleged scheme by describing her interactions with Capella over time and including specific examples of Capella's alleged misrepresentations. Finally, Plaintiff has alleged specific injury from the fraud. Because there is sufficient detail "to allow the defendant to prepare a responsive pleading," *BiotronX*, 465 F. Supp. 3d at 809, Plaintiff's misrepresentation and TCPA claims survive initial review under Rule 9(b). These claims may, therefore, proceed for further development.

2. <u>Breach of Contract</u>

To plead a breach of contract under Tennessee law, a plaintiff must plausibly allege: (1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breach. *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 689 (M.D. Tenn. 2018) (citing *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 828 (M.D. Tenn. 2014)). The Tennessee Supreme Court has described the student-university relationship as "contractual in nature." *Id*. (quoting *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 577 (6th Cir. 1988)). Likewise, the Court of Appeals for the Sixth Circuit, applying Tennessee law, has "rejected a rigid application of contract law in this area," and held that "the student-university relationship is contractual in nature." *Sifuna v. S. Coll. of Tenn., Inc.*, No. 17-5660, 2018 WL 3005814, at *2 (6th Cir. Apr. 5, 2018); *see also Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 255 (6th Cir. 2005) (recognizing potential for an implied contract between student and university). In particular, "[c]atalogs, manuals, student handbooks, bulletins, circulars and regulations of a university" help

define the contractual relationship. *Z.J.*, 355 F. Supp. 3d at 689 (quoting *Atria*, 142 F. App'x at 255).

Here, the Complaint alleges that Capella – an online university – published on the university website "information" and "basic terms" concerning the academic program and university customer service available to adult learners. (Doc. No. 8 at 8). The Complaint further alleges that, upon Plaintiff's matriculation, Capella "failed to follow through with those promises," causing Plaintiff damages. (*Id.*) Accordingly, the Court finds that, at this early stage, Plaintiff states a colorable claim that Capella breached an implied contract regarding student services defined, at a minimum, by online university materials. Plaintiff's breach of contract claim may, therefore, proceed for further development.

    3. <u>Unjust Enrichment</u>

In Tennessee, unjust enrichment is a quasi-contractual theory of recovery "in which a court may impose a contractual obligation where one does not exist." *Z.J.*, 355 F. Supp. 3d at 701 (quoting *Cole v. Caruso*, No. W2017-00487-COA-R3-CV, 2018 WL 1391625, at *3 (Tenn. Ct. App. Mar. 20, 2018)); *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998). Courts may only impose a contractual obligation under an unjust enrichment theory "if there is no contract between the parties or the contract has become unenforceable or invalid and the defendant will be unjustly enriched unless the court imposes an obligation." *Bridgeforth v. Jones*, No. M2013-01500-COA-R3-CV, 2015 WL 336376, at *19 (Tenn. Ct. App. Jan. 26, 2015) (emphasis removed) (citing *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966)). As one might expect, "the most significant requirement in a claim for unjust enrichment is that the enrichment to the defendant be unjust." *Cole*, 2018 WL 1391625, at *3 (citing *Freeman Indus.,*

11

*LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *Whitehaven Cmty. Baptist Church*, 973 S.W.2d at 596).

To plead an unjust enrichment claim, Plaintiff must plausibly allege: (1) a benefit conferred upon Capella by Plaintiff; (2) appreciation by Capella of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for Capella to retain the benefit without payment of the value thereof. *Z.J.*, 355 F. Supp. 3d at 701 (citing *Freeman Indus.*, 172 S.W.3d at 525). The Complaint alleges that Plaintiff conferred a benefit of at least $80,000 in tuition upon Capella and that Capella is inequitably retaining that benefit by holding Plaintiff "hostage" and refusing to allow her to access her records or receive her degree while Capella unreasonably pursues a small purported debt. Plaintiff claims that it is unfair for Capella to have taken all of her financial resources and left her with "nothing" despite promises of assistance. (Doc. No. 6, 8). Liberally construing the Complaint, Plaintiff has sufficiently alleged that Capella has been unjustly enriched.[3] This claim may proceed for additional development.

   4. Negligence

Plaintiff also brings a negligence claim. To plead negligence under Tennessee law, a plaintiff must plausibly allege: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation. *Power & Tel. Supply. Co.*, 447 F.3d at 932 (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). However, where the "breach of duty" that a plaintiff alleges occurred is a breach of contractual obligations, whether or not the defendant was negligent in attempting performance, "the action remains in contract." *Id*. (collecting cases); *see also Permobil, Inc. v. Am. Express Travel Related Servs., Inc.*, 571 F. Supp. 2d 825, 842 (M.D.

---

[3] This claim, necessarily, proceeds in the alternative to Plaintiff's breach of contract claim.

Tenn. 2008) ("[I]f the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty, without more, ordinarily will not support a negligence action."); *America's Collectibles Network, Inc. v. Sterling Commerce (America), Inc.*, Case No. 3:09-cv-143, 2016 WL 9132294, at *19 (E.D. Tenn. Sept. 7, 2016) ("Under Tennessee law . . . [w]here the only duty alleged arises from a contractual obligation, its breach cannot form the basis of a parallel negligence claim.") Accordingly, if a negligence claim does not involve alleged extra-contractual duties, "the first element of the tort claim fails." *Silvestro v. Bank of Am., N.A.*, No. 3-13-0066, 2013 WL 1149301, at *4 (M.D. Tenn. Mar. 19, 2013).

Here, the Complaint does not allege that Capella negligently breached any identifiable extra-contractual duty or unreasonably harmed the Plaintiff outside the context of the student-university relationship. *See, e.g.*, *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 764 (M.D. Tenn. 2019) (collecting cases dismissing negligence claims against universities because students did not identify a duty outside the implied student-university contractual relationship). Rather, Plaintiff's negligence claim is essentially duplicative of her breach of implied contract claim – i.e., that Capella promised to provide certain service and resources, but failed to deliver those services after Plaintiff enrolled. (*See* Doc. No. 8 at 7). Thus, Plaintiff's negligence claim impermissibly "recast[s] contractual claims in the language of tort." *Z.J.*, 355 F. Supp. 3d at 705 (collecting cases). Plaintiff's negligence claim must be dismissed.

5. Strict Liability

Finally, Plaintiff brings a claim for "strict liability." (Doc. No. 8 at 9). Tennessee law recognizes several types of strict liability. Because this claim is based upon Capella's alleged deceptive marketing, the Court infers that Plaintiff intended to bring a strict liability claim under Section 402B of the *Restatement (Second) of Torts* (1965). *See City of Franklin v. W.L. Hailey &*

13

*Co.*, No. M201801535COAR3CV, 2019 WL 5607796, at *5 (Tenn. Ct. App. Oct. 30, 2019). Section 402B imposes strict liability upon a seller for misrepresentation of material facts concerning the character or quality of a chattel sold by it, even in the absence of negligence and privity of contract. *Id*. (quoting *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 131-32 (Tenn. 1995)). However, liability under Section 402B is limited to physical harm to a person or property and "does not extend to economic loss." *Id*. Here, the Complaint does not allege physical harm to a person or property. Accordingly, Plaintiff's strict liability claim under Section 402B must be dismissed.[4]

## II. CONCLUSION

For the reasons explained above, the Court concludes that Plaintiff has stated the following colorable claims: (1) TCPA Section 47-18-104(b)(7); (2) TCPA Section 47-18-104(b)(21); (3) intentional misrepresentation; (4) promissory fraud; (5) breach of contract; and (6) unjust enrichment. Plaintiff's negligence and strict liability claims will be dismissed. This case will be referred to the Magistrate Judge for further proceedings.

An appropriate order will be entered.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[4] To the extent Plaintiff may have intended to bring a claim for negligence per se, such a claim must also be dismissed. To plead a claim of negligence per se, Plaintiff must plausibly allege, among other things, that Capella violated a statute, ordinance, or regulation that requires or prohibits a particular act for the benefit of the plaintiff or the general public. *Z.J.*, 355 F. Supp. 3d at 702 (citing *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992)). Here, the Complaint does not allege with any specificity that Capella violated a statute that "establish[es] a specific applicable standard of conduct." *Id*. (citing *Thomas & Assocs., Inc. v. Metro. Gov't of Nashville and Davidson Cnty.*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *7 (Tenn. Ct. App. June 6, 2003)).