UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NAZLE AMIRAZODI,<br><br>Plaintiff,<br><br>v.<br><br>CAPELLA EDUCATION COMPANY,<br><br>Defendant. | Case No. 3:21-cv-00074<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable William L. Campbell, Jr., District Judge

**REPORT AND RECOMMENDATION**

Defendant Capella Education Company has filed a motion to dismiss pro se Plaintiff Nazle Amirazodi's second amended complaint. (Doc. No. 16.) Amirazodi, who appears *in forma pauperis*, has responded in opposition (Doc. No. 19), and Capella has filed a reply (Doc. No. 20). For the reasons that follow, the Magistrate Judge will recommend that the Court grant in part and deny in part Capella's motion to dismiss.

## I. Background

### A. Factual Background[1]

Capella is a for-profit online university based in Minnesota. (Doc. Nos. 6, 8.) Amirazodi is a Tennessee resident. (Doc. Nos. 6, 8.) In 2015, Amirazodi chose to enroll at Capella because of

[1] In screening Amirazodi's second amended complaint under 28 U.S.C. § 1915(e)(2)(B), the Court exercised its discretion to construe the factual allegations in Amirazodi's first amended complaint and second amended complaint together. (Doc. No. 9); *see also Corley v. Dental Bliss*, No. 3:17-cv-01211, 2019 WL 2746776, at *1 n.1 (M.D. Tenn. June 6, 2019) (discussing circumstances in which district courts have discretion to construe amended pleadings in conjunction with past pleadings), *report and recommendation adopted*, 2019 WL 2725209 (M.D.

information available on Capella's website and verbal promises that Capella representatives made to her. (Doc. Nos. 6, 8.) Amirazodi states that Capella

> promise[d] solid customer service, help to achieve a degree on [her] own terms, easy access, guidance to ensure [she] finish[ed] the program [she] cho[]se, [and] assistance figuring out financial aid and ways to fund [her] degree. They also promised the ability to earn a degree that would lead [her] to better employment opportunities.

(Doc. No. 8, PageID# 55.)

Amirazodi enrolled at Capella from 2015 to 2017. (Doc. No. 6.) She paid tuition and incurred approximately $80,000 in student loan debt. (*Id.*) By 2017, Amirazodi "had completed all courses required to earn [her] degree . . . ." (*Id.* at PageID# 26.) Capella informed her that, in order to graduate, Amirazodi had to complete a "'Capstone Project[,]'" which Capella characterized as "a course you register for" that is also "an application to graduate." (*Id.*) But Amirazodi had "r[u]n out of financial aid" because she had "used the maximum amount allotted to each student." (*Id.*) She called Capella to ask about financing options and whether "there was a way to create a payment plan . . . ." (*Id.*)

A Capella representative "told [Amirazodi] there were no options other than paying the full amount up front." (*Id.*) Amirazodi tried "email[ing] Capella's financial aid office" and "call[ing] back and forth speaking to different representatives[,]" but everyone at Capella gave her "the same non-helpful answer[:] Unless [she] could produce the full amount up front, [she] was not going to be permitted to graduate." (*Id.*) Amirazodi states that Capella made "no reasonable effort . . . to help [her] complete the program" and, instead, told her that she "had to pay in full with no explanation of what the charges were . . . ." (*Id.* at PageID# 35.) Amirazodi "agreed to pay the full

---

Tenn. July 1, 2019). The facts in this section are therefore drawn from Amirazodi's first and second amended complaints. (Doc. Nos. 6, 8.)

amount and explained [she would] need time to come up with it." (*Id.* at PageID# 26.) A Capella representative told her that "was fine as long as [she] paid the amount in full." (*Id.*)

Capella then sent Amirazodi's $3,200 balance to collections, and a debt collection agency "harassed [her] day and night." (*Id.*) Amirazodi spoke to several Capella representatives who gave her "different information or no information" about what the balance was for and "whether [she] would be graduating and obtaining a degree upon payment." (*Id.*) Eventually, Amirazodi obtained an invoice from Capella that states her balance "is a culmination of fees and tuition over four semesters[,]" but Amirazodi states she "was never told about these balances prior to inquiring about graduation." (*Id.* at PageID# 36.) Amirazodi "tried, for years, to get [answers] from customer service at Capella, but to no avail." (*Id.*)

Amirazodi states that Capella's actions negatively affected her credit score and prevented her from obtaining a degree. (Doc. Nos. 6, 8.) Capella has told Amirazodi that, even if she "paid the past balance[,] [she] would not actually graduate." (Doc. No. 6, PageID# 27.) Instead, she "would only be permitted to reapply for entry into Capella and then[,] once approved[,] [she] could request to see if [she] met the requirements to graduate." (*Id.*)

### B. Procedural History

Amirazodi initiated this action on February 1, 2021, by filing a complaint against Capella (Doc. No. 1) and an application for leave to appear *in forma pauperis* (Doc. No. 2). The Court granted Amirazodi's *in forma pauperis* application but found that her complaint "fail[ed] to identify any specific legal claim, theory, or cause of action that [Amirazodi] believes plausibly entitles her to relief" based on the alleged facts. (Doc. No. 5, PageID# 18.) The Court allowed Amirazodi time to file an amended complaint. (Doc. No. 5.) Amirazodi did so (Doc. No. 6), but the Court found that, although it included additional facts, the amended complaint "still fail[ed] to make clear what legal claim [Amirazodi] seeks to bring." (Doc. No. 7, PageID# 45.) The Court

afforded Amirazodi one final opportunity to amend her complaint and specify the legal claims or theories she intended to pursue. (Doc. No. 7.) Amirazodi filed a second amended complaint on April 15, 2021, alleging that Capella violated the Tennessee Consumer Protection Act (TCPA) and Tennessee laws governing negligence, breach of contract, strict liability, and fraudulent misrepresentation. (Doc. No. 8.) The second amended complaint seeks $250,000 in damages. (*Id.*)

The Court screened Amirazodi's second amended complaint under 28 U.S.C. § 1915(e)(2)(B). (Doc. No. 9.) Liberally construing the facts alleged with those alleged in the first amended complaint, the Court found that Amirazodi had stated colorable claims for relief under two sections of the TCPA, Tenn. Code Ann. §§ 47-18-104(b)(7) and 47-18-104(b)(21), as well as claims under Tennessee law for intentional misrepresentation, promissory fraud, breach of contract, and unjust enrichment. (*Id.*) The Court found that Amirazodi had failed to state plausible claims under Tennessee law for negligence and strict liability and dismissed those claims. (Doc. Nos. 9, 10.)

Capella now moves to dismiss the remaining claims in Amirazodi's second amended complaint for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 16.) Capella argues that the relevant statutes of limitations bar Amirazodi's TCPA, intentional misrepresentation, and promissory fraud claims and, alternatively, that these claims fail on the merits because Amirazodi has failed to plead them with the particularity that Federal Rule of Civil Procedure 9(b) requires for claims based in fraud. (Doc. No. 17.) Capella argues that the Court should dismiss Amirazodi's breach of contract claim because the language Amirazodi identifies as the contract's terms is "too indefinite to create a contractual obligation." (*Id.* at PageID# 103.) Capella argues that Amirazodi's unjust enrichment claim fails because (1) once Amirazodi paid tuition, she and Capella had an enforceable

contractual relationship that precludes recovery on a theory of unjust enrichment; and (2) it is not inequitable for Capella to retain Amirazodi's tuition money because Amirazodi received the benefit of attending classes. (Doc. No. 17.)

Amirazodi responds that her TCPA, intentional misrepresentation, and promissory fraud claims are timely because she did not immediately know that Capella's actions were unlawful or that she would be unable to resolve the issues with Capella without court intervention. (Doc. No. 19.) She further argues that she has pleaded the TCPA, intentional misrepresentation, and promissory fraud claims with sufficient particularity. (*Id.*) Amirazodi argues that her breach of contract claim should proceed because she and Capella entered into an implied contract when she registered for classes and paid tuition, among other things, and Capella breached that contract. (*Id.*) Finally, she argues that her unjust enrichment claim should proceed because it is unjust for Capella to retain her tuition money while preventing her from obtaining her degree. (*Id.*)

Capella argues in reply that Amirazodi's TCPA, intentional misrepresentation, and promissory fraud claims are time-barred because the statutes of limitations began to run when she knew or should have known about her alleged injuries and expired before Amirazodi initiated this action. (Doc. No. 20.) Capella also argues that Amirazodi's breach of contract claim fails because online marketing and advertising materials generally do not give rise to contractual obligations. (*Id.*) Capella's reply does not address Amirazodi's unjust enrichment arguments.

## II. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the

claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Amirazodi appears pro se, the Court construes her filings "'liberally'" and holds her complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III. Analysis

### A. Amirazodi's TCPA, Intentional Misrepresentation, and Promissory Fraud Claims

Capella argues that the relevant statutes of limitations bar Amirazodi's TCPA, intentional misrepresentation, and promissory fraud claims.[2] (Doc. No. 17.) "The statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim[.]" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (first citing Fed. R. Civ. P. 8(c); then citing Fed. R. Civ. P. 8(a); and then citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Accordingly, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.* There is an exception to this general rule, however, when "the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Id.* (citing *Jones*, 549 U.S. at 215).

Where, as here, a federal court's jurisdiction is based on diversity of citizenship, the court "must apply the procedural law, including statutes of limitations, of the forum state[.]" *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989). The TCPA provides that actions must "be brought within one (1) year from a person's discovery of the unlawful act or practice[.]" Tenn.

---

[2] As the Court explained when it screened Amirazodi's pleadings, "[t]he TCPA creates a cause of action for damages available to '[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b).'" (Doc. No. 9, PageID# 66 (quoting Tenn. Code Ann. § 47-18-109(a)(1)).) "The Tennessee Supreme Court has explained that the terms 'fraud,' 'intentional misrepresentation,' and 'fraudulent misrepresentation' all refer to the same tort, and expressed its preference for the term 'intentional misrepresentation.'" (*Id.* at PageID# 68 (quoting *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014)).) "In addition, 'a future promise can support a claim for intentional misrepresentation if it was made with the intent not to perform.' This type of claim is known as 'promissory fraud.'" (*Id.* at PageID# 69 (quoting *BiotronX, LLC v. Tech One Biomedical, LLC*, 465 F. Supp. 3d 797, 809–810 (M.D. Tenn. 2020)).)

Code Ann. § 47-18-110. Section 28-3-105 of the Tennessee Code sets a three-year statute of limitations for "[a]ctions for injuries to personal or real property[,]" Tenn. Code Ann. § 28-3-105(1), that Tennessee courts apply to intentional misrepresentation and promissory fraud claims, *Ne. Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 459 (Tenn. Ct. App. 2006) (applying Tenn. Code Ann. § 28-3-105 to intentional misrepresentation claim); *Adams v. Delk Indus., Inc.*, No. 3:19-cv-00878, 2021 WL 354096, at *6 (M.D. Tenn. Feb. 2, 2021) (applying Tenn. Code Ann. § 28-3-105 to promissory fraud claim). For all three types of claims, "a cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 930 (6th Cir. 2006) (quoting *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990)); *see also Ne. Knox Util. Dist.*, 206 S.W.2d at 459; *Adams*, 2021 WL 354096, at *6.

Amirazodi alleges that Capella refused to help her finance her Capstone Project and sent her account balance to collections in 2017, which prevented her from earning her degree. (Doc. Nos. 6, 8.) Because these facts underlie Amirazodi's TCPA, intentional misrepresentation, and promissory fraud claims, and because Amirazodi alleges that she knew them in 2017, her pleading affirmatively shows that the statutes of limitations on her TCPA, intentional misrepresentation, and promissory fraud claims began to run in 2017. The docket reflects that Amirazodi did not initiate this action until February 2021, more than three years later. (Doc. No. 1.)

Amirazodi admits that she "was aware of unfair acts happening" but argues that "time has not run out on any of these claims" because she "assumed [she and Capella would] be able to come to a resolution where [she] g[o]t to graduate and go on [her] way" and she "was not aware these issues were not going to get resolved in 2017[.]" (Doc. No. 19, PageID# 114.) But the Tennessee

Supreme Court has held that a "plaintiff may not . . . delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff." *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998). The statutes of limitations on Amirazodi's TCPA, intentional misrepresentation, and promissory fraud claims began to run when she became "aware of facts sufficient to put a reasonable person on notice that . . . she ha[d] suffered an injury as a result of [Capella's] wrongful conduct[,]" not when she realized that Capella would refuse to cooperate with her to resolve her claims. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002); *see also Shadrick*, 963 S.W.2d at 733 (holding that "the statute of limitations is not tolled until the plaintiff actually knows the 'specific type of legal claim he or she has'" (quoting *Stanbury v. Bacardi*, 953 S.W.2d 671, 678 (Tenn. 1997))). Amirazodi's TCPA, intentional misrepresentation, and promissory fraud claims are therefore time-barred, and Capella's motion to dismiss should be granted as to those claims.[3]

**B. Amirazodi's Breach of Contract Claim**

"In Tennessee, to allege a breach of contract a plaintiff must plead (1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breach." *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 689 (M.D. Tenn. 2018). In screening Amirazodi's pleadings, the Court found that "[t]he Tennessee Supreme Court has described the student-university relationship as 'contractual in nature'" and that "the Sixth Circuit,

---

[3] Because the Court finds that Amirazodi's TCPA, intentional misrepresentation, and promissory fraud claims are barred by the applicable statutes of limitations, it need not consider Capella's alternative argument that Amirazodi has failed to plead these claims with the particularity required by Rule 9(b). *See Hight v. Cox*, No. 3:13-CV-00367, 2013 WL 6096784, at *8 n.12, *9 n.14 (M.D. Tenn. Nov. 20, 2013) (declining to consider alternative arguments regarding failure to state a claim after finding that plaintiff's claims were barred by statutes of limitations); *Walker v. Martin*, No. 5:20-cv-00077, 2020 WL 7083967 at *3 (W.D. Ky. Dec. 3, 2020) (same).

applying Tennessee law, has 'rejected a rigid application of contract law in this area,'" also holding that "'the student-university relationship is contractual in nature.'" (Doc. No. 9, PageID# 71 (first quoting *Z.J.*, 355 F. Supp. 3d at 689; and then quoting *Sifuna v. S. Coll. of Tenn., Inc.*, No. 17-5660, 2018 WL 3005814, at *2 (6th Cir. Apr. 5, 2018))); *see also Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 255 (6th Cir. 2005) (citing *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 577 (6th Cir. 1988)). The Court noted that "'[c]atalogs, manuals, student handbooks, bulletins, circulars and regulations of a university' help define the contractual relationship.'" (Doc. No. 9, PageID# 71–72 (alteration in original) (quoting *Z.J.*, 355 F. Supp. 3d at 689).) Applying these standards to Amirazodi's factual allegations, the Court found that Amirazodi "states a colorable claim that Capella breached an implied contract regarding student services defined, at a minimum, by online university materials." (*Id.* at PageID# 72.)

Capella now argues that Amirazodi has failed to state a breach of contract claim because she has not alleged the existence of an enforceable contract. (Doc. No. 17.) Specifically, Capella argues that the language in its online materials, which Amirazodi describes in her complaints, is "simply too indefinite to create a contractual obligation." (*Id.* at PageID# 103.) Capella argues that "marketing information on a university's website" "differ[s] significantly" from the "[c]atalogs, manuals, student handbooks, bulletins, circulars and regulations of a university" that "courts have recognized . . . as bases for implied contracts" between students and universities but cites no authority for its distinction between statements made online and in printed materials. (*Id.* at PageID# 103–4 (second alteration in original).) Capella's argument fails for three reasons.

First, courts generally recognize that implied contractual relationships between students and universities are unique in that their terms may be stated in various sources. As one court has explained, "[b]ecause the multi-faceted contractual relationship between a university and its

students is generally not documented within a single integrated express writing, it is comprised of—and the courts look to—the many different representations provided to the students during their enrollment." *Figueroa v. Point Park Univ.*, --- F. Supp. 3d ---, 2021 WL 3549327, at *6 (W.D. Penn. Aug. 11, 2021). These may include representations made on universities' websites, including promotional statements, as many courts have found. *See, e.g.*, *Doe v. Emory Univ.*, No. 1:20-CV-2002, 2021 WL 358391, at *5, 6 (N.D. Ga. Jan. 22, 2021) (finding that "promotional statements" in defendant university's "website and catalog" "can help define the scope of any implied contract"); *Botts v. Johns Hopkins Univ.*, No. ELH-20-1335, 2021 WL 1561520, at *13 (D. Md. Apr. 21, 2021) (finding that defendant university's online "'promotional statements . . . can help define the scope of an implied contract'" (quoting *Doe*, 2021 WL 358391, at *6)); *Patel v. Univ. of Vt. & State Agric. Coll.*, 526 F. Supp. 3d 3, 13–14 (D. Vt. 2021) (denying university defendant's motion to dismiss student plaintiffs' breach of contract claims where students alleged that specific "portions of the [university's] course catalogue and website" gave rise to implied contract); *Smith v. Univ. of Penn.*, 534 F. Supp. 3d 463, 475 (E.D. Penn. 2021) (declining to dismiss student plaintiffs' breach of contract claim where "descriptions on [university's] website" "amount[ed] to a specific promise to provide [certain] services, resources and facilities to students"); *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283, 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020) (denying university defendant's motion to dismiss student plaintiffs' breach of contract claim where "statements on [university's] website" plausibly gave rise to implied contract). Capella offers no contrary authority establishing that representations made in traditional university bulletins and circulars are materially different from representations made on a website for purposes of a breach of contract analysis.

Instead, Capella cites *McKee v. Meltech, Inc.*, No. 10-2730, 2011 WL 1770461, at *8 (W.D. Tenn. May 9, 2011), to argue that, under Tennessee law, "'advertisements and solicitations are generally [not considered] . . . offers that may be accepted and form a binding contract'" (Doc. No. 17, PageID# 104). But *McKee* addressed a defendant company's solicitation of modeling contestants and did not consider the formation or terms of an implied contract between a student and a university. *See* 2011 WL 1770461, at *7–9. Further, the *McKee* court ultimately found that the plaintiff's breach of contract claim failed because her "complaint [was] silent about how [the defendant] solicited entrants in the contest and what language it used." 2011 WL 1770461, at *8. Amirazodi's pleadings identify specific language and describe specific promises Capella made in materials on its website and that its representatives made in conversations with Amirazodi. (Doc. Nos. 6, 8.) For example, Amirazodi states that Capella

> promise[d] solid customer service, help to achieve a degree on [her] own terms, easy access, guidance to ensure [she] finish[ed] the program [she] cho[]se, [and] assistance figuring out financial aid and ways to fund [her] degree. They also promised the ability to earn a degree that would lead [her] to better employment opportunities.[4]

(Doc. No. 8, PageID# 55.)

Second, Capella's argument ignores Amirazodi's allegations that Capella representatives "also verbally explained a majority of [these] promises . . . prior to [her] enrolling." (*Id.*) Courts analyzing the existence and scope of implied contracts between students and universities also look

---

[4] Capella's reliance on *American Accessories International, LLC v. Conopco, Inc.*, No. 3:15-CV-49, 2016 WL 632449, at *4 (E.D. Tenn. Feb. 17, 2016), and *Le-Jo Enterprises v. Cracker Barrel Old Country Store, Inc.*, No. M2013-01014-COA-R3CV, 2013 WL 6155622, at *4 (Tenn. Ct. App. Nov. 20, 2013), is similarly misplaced. Neither case addresses the formation or terms of an implied contract between a student and a university. Further, the court in *Le-Jo Enterprises* affirmed the trial court's dismissal of one defendant's breach of contract claims primarily because the plaintiff's pleadings affirmatively showed that the plaintiff did not have any direct dealings with that defendant. 2013 WL 6155622, at *7. By contrast, Amirazodi has alleged direct dealings with Capella before and after her enrollment. (Doc. Nos. 6, 8.)

to the parties' course of conduct, including representations made in conversations. *Compare Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 33 (D. Conn. 2021) (denying university's motion to dismiss student plaintiff's breach of contract claim where student plausibly alleged that "language illustrated in the [university's] Bulletin and . . . website" "in combination with the parties' alleged course of conduct" gave rise to implied contract that university breached), *with Chira v. Columbia Univ.*, 289 F. Supp.2d 477, 485 (S.D.N.Y. 2003) (finding student plaintiff failed to state a colorable breach of contract claim where student "point[ed] to no document or conversation that g[a]ve[ ] rise to a promise which [the university defendant] breached"). Thus, Amirazodi's allegations regarding her conversations with Cappella's representatives also must be considered as helping to establish the implied contract's terms.

Finally, Capella concedes elsewhere in its brief that, after Amirazodi paid tuition and enrolled at Capella, "the relationship between Capella and [Amirazodi], as a then-enrolled student there, [wa]s sufficiently 'contractual in nature' to constitute an implied contract." (Doc. No. 17, PageID# 106.) Amirazodi agrees that she and Capella "entered into a contract" "[w]hen [she] actually registered (agreeing to the terms of the program) and began paying Capella (through federally funded aid)[.]" (Doc. No. 6, PageID# 35.) Accordingly, it is undisputed that an enforceable, implied contract existed between Amirazodi and Capella once she paid tuition and enrolled. The only dispute concerns the scope of the terms of that implied contract and whether Capella's actions breached it. Cappella offers no compelling reason or authority to depart from the Court's prior finding that Amirazodi has "state[d] a colorable claim that Capella breached an implied contract regarding student services defined, at a minimum, by online university materials." (Doc. No. 9, PageID# 72.)

Capella's motion to dismiss should therefore be denied in part as to Amirazodi's breach of contract claim.

**C. Amirazodi's Unjust Enrichment Claim**

Capella argues that Amirazodi has failed to state a claim for unjust enrichment because, once she enrolled and paid tuition, Amirazodi and Capella's relationship was "sufficiently 'contractual in nature' to constitute an implied contract" and "[a]n unjust enrichment claim must be dismissed where 'there is an enforceable contractual relationship between'" the parties. (Doc. No. 17, PageID# 106 (quoting *Z.J.*, 355 F. Supp. 3d at 689, 702).) But, just as Cappella may argue that the Court should dismiss Amirazodi's unjust enrichment claim because there is an enforceable contract between the parties and should dismiss the breach of contract claim because no contract has been formed, Amirazodi may plead unjust enrichment as an alternative to her breach of contract claim. (Doc. No. 9, PageID# 73 n.3.)

Capella's argument that Amirazodi's unjust enrichment claim must fail because she has received the benefit of the courses she completed (Doc. No. 17) does not support dismissal at this phase. Capella cites *Z.J.* to argue that, "[w]hile [Amirazodi] 'did not receive h[er] degree, [she] did receive a significant educational benefit that [Capella] presumably would not have offered without payment of tuition.'" (*Id.* at PageID# 107 (third, fourth, and fifth alterations in original) (quoting 355 F. Supp. 3d at 702 n.43).) In *Z.J.*, the court explained that it "question[ed] whether [the student plaintiff] ha[d] adequately pleaded" his unjust enrichment claim because the student "was expelled at the *end* of four years of education" and did "not allege that he ha[d] been unable to matriculate at another school or transfer his credits." 355 F. Supp. 3d at 702 n.43. However, the court further explained that "the Tennessee Court of Appeals recently declined to consider whether the payment of any consideration prevents a plaintiff from recovering under an unjust enrichment claim in any context" and the *Z.J.* court therefore declined "to predict how the Tennessee courts

will resolve this question over time." *Id.* (citing *Cole v. Caruso*, No. W2017-00487-COA-R3-CV, 2018 WL 1391625, at *5 (Tenn. Ct. App. Mar. 20, 2018)). In a more recent decision, the Tennessee Court of Appeals reaffirmed *Cole*'s holding that a plaintiff claiming unjust enrichment "must present competent proof that *he conferred a benefit on the defendant beyond what he has previously been compensated for*." *Concrete v. Harmony Hosp., LLC*, No. M2020-00956-COA-R3-CV, 2021 WL 3523248, at *8 (Tenn. Ct. App. Aug. 11, 2021) (quoting *Cole*, 2018 WL 1391625, at *4). Thus, contrary to Capella's argument, *Z.J.* does not stand for the proposition that this Court must dismiss Amirazodi's unjust enrichment claim as a matter of law because she received the benefit of attending classes in exchange for her tuition.[5]

Capella also relies on *McLearn v. Wyndham Resort Development Corp.*, No. 3:19-cv-00004, 2020 WL 1189844, at *9 (M.D. Tenn. Mar. 11, 2020), and *Brewco, LLC v. Scent*, No. E2018-02133-COA-R3-CV, 2019 WL 5566353, at *6 (Tenn. Ct. App. Oct. 29, 2019), for the proposition that, "[w]here consideration has been given, it is not unjust to retain the benefit, and the unjust enrichment claim necessarily fails." (Doc. No. 17, PageID# 107.) Neither *McLearn* nor *Brewco* addresses the *Cole* court's refusal "to hold broadly that any consideration prevents a plaintiff from recovering under an unjust enrichment claim in any context[.]" *Cole*, 2018 WL 1391625, at *5. This Court considered both *Z.J.* and *Cole* in screening Amirazodi's pleadings and finding that she "has sufficiently alleged that Capella has been unjustly enriched." (Doc. No. 9, PageID# 73.) Capella has not provided any persuasive argument or legal authority to convince the

5 Further, the facts of *Z.J.* are distinguishable. Unlike the plaintiff in *Z.J.*, Amirazodi has alleged that Capella refuses to allow her "access to [her] official transcripts" (Doc. No. 6, PageID# 27) and that she cannot "just transfer" her Capella credits to another educational institution (Doc. No. 8, PageID# 56).

Court to depart from its finding that Amirazodi's unjust enrichment "claim may proceed for additional development." (*Id.*)

Capella's motion to dismiss should therefore be denied in part as to Amirazodi's unjust enrichment claim.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Capella's motion to dismiss (Doc. No. 16) be GRANTED IN PART AND DENIED IN PART. Specifically, the motion should be GRANTED with respect to Amirazodi's TCPA, intentional misrepresentation, and promissory fraud claims, and DENIED with respect to Amirazodi's breach of contract and unjust enrichment claims.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 31st day of January, 2022.

ALISTAIR E. NEWBERN
United States Magistrate Judge